*M·Caleb* for the plaintiff, *Preston* for the defendant.

---

## BAINBRIDGE vs. CLAY.

The creditors of the assignor may seize the debt assigned, as long as the assignee has not given notice of the assignment to the debtor.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. This case was lately remanded for further proof, the same judgment was given, and Bainbridge appealed. *Vol.* 3, 671.

The facts of the case are, that Clay obtained a judgment against Oldham, and Bainbridge one against Clay. Bainbridge having taken out a *fi. fa.* on his judgment, Polk, the agent of Oldham paid into court the amount of Clay's judgment against Oldham, and Bainbridge prayed that the court order the money thus in court to be applied to his judgment.

Hennen intervened and claimed the amount of the judgment against Oldham, as assignee of

Waggaman to whom he alleged Clay had assigned it.

A debt due to the defendant on a *fi. fa.* cannot, as to third parties completely pass to the assignee, unless there be what, in sales of tangible property, is called a tradition, or delivery, and this is effected, as to *choses* in action, by notice of the assignment to the debtor.

In the present case, the record shews that the sheriff received Bainbridge's *fi. fa.* against Clay, on the 1st. of February, 1825. On that day, according to law, Clay's personal property was so affected by the *fi. fa.* as no longer to be saleable by him, to the injury of the plaintiff in the *fi. fa.*

Folwell, a witness of the assignee, deposes he delivered a copy of both assignments to Oldham, on the fourth day after he left New-Orleans, and he believes he left that city on the 31st of January. So that, according to this witness, the notice, which was in lieu of the tradition of property, took place, after the *fi. fa.* of Bainbridge was put in the hands of the sheriff.

Farrie, another witness of the assignee, deposes that, in a conversation that took place in the clerk's office, between Hennen, Waggaman,

and Polk, the agent of Oldham, he heard Hennen tell Polk, he was the assignee of Clay's judgment against Oldham, and requested Polk not to pay the money to any body else. The witness believes this was before Bainbridge took out his *fi. fa.* against Clay, but he cannot recollect any particular circumstance that induces this belief; neither can he recollect the time, when he issued the execution *i. e.* when it went out of the office. He is the deputy clerk. Polk's testimeny does not make the evidence much clearer.

Admitting what is extremely dubious, that it clearly results from this man's testimony, that the conversation with Polk took place before the *fi. fa.* issued, nothing shews that Polk was such an agent, to whom such a notice could be legally given. It only appears he had Oldham's money in his hannds and was directed to discharge the judgment.

We therefore conclude this conversation does not establish a legal notice. Polk did not consider himself authorired to pay Hennen, although he proposed giving his check, since he paid the money in court.

It is therefore ordered, adjudged and decreed, that the judgment of the district court

be annulled, avoided and reversed, and it is further ordered that the money in court, paid by Polk in discharge of Oldham, be applied to the discharge of Bainbridge's judgment against Clay, and that the assignee and appellee pay costs in this court.

*Waggaman,* on an application for a rehearing. The notice to Polk, the day before issuing the execution of Bainbridge, is proved both by Polk and Farrie. But it is said Polk does not appear to have been such an agent as could receive notice. What was Polk's agency? To pay over this money in satisfaction of Clay's judgment merely. But the law gives him in addition all the powers necessary to carry this into execution, in a proper manner, *e. g.* to take receipts for the payment, and to see satisfaction entered on the record, and he would have been wanting in his duty, and answerable to Oldham, for neglecting to do so. This satisfaction could only be entered by Hennen, and Polk must have paid to the claimant. It may be said, that Oldham, had no means of knowing of the assignment, and could not have intended an authority to meet it; this is true, but he knew the judgment was *assignable,* and might be transferred; though he could not foresee the claimant would be the assignee,

the person who was to receive, was of no consequence; the satisfaction of the judgment was the object of the mandate, and it seems to be going too far, to say Polk's authority did not extend to informing himself who was the person authorised to receive. Had Clay died in the interval, Polk might well have received notice of, who were heirs or executors, and paid accordingly. See the case of *Touro* vs. *Cushing*, *vol.* 1, 425, In a similar case a notice was given by an agent, and no question was made as to his authority; and, if an agent's power authorises him to give, it would seem to authorise him to receive, notice. The right to receive this notice appears to be an affair for Oldham to decide upon. But if Polk was not such an agent as to receive notice of an assignment of a debt, how could he be such an agent as could receive notice of its seizure; for, as will be seen hereafter noticed, it was not the money that was or could be seized, it was the *debt*, the incorporeal right due from Oldham to Clay, and that should have been seized in the debtor's hands, which leads to the second question.

Was the *fi. fa.* a lien on this money? And could the plaintiff legally seize it, under the

terms of the writ, "property of John Clay?"
The debt attempted to be seized, is due by
Oldham to Clay, and is clearly the property of
the latter; but Oldham resides in another pa-
rish where the sheriff of Orleans could not act,
nor could a *fi. fa.* in his hands bind or prevent
the transfer of Clay's property. It is therefore,
clear that the execution of Bainbridge did not
attach to or bind the estate of Oldham, unless
the *identical* money in Polk's hands, was the
property of Clay. Independently of the ex-
press admission, page 5 of the record, that the
money was Oldham's, and that Polk had no
property of Clay in his hands, surely Oldham
might, at any instant before the seizure, have
withdrawn it from Polk's hands; he might have
applied it to the payment of another debt, or put
it in his pocket and suffered Clay to seize on
his property. Had it, the money, been stolen
or destroyed, no one would been heard to say
the loss was Clay's or that his judgment against
Oldham was thereby satisfied. Had there
been an attachment or seizure in the sheriff's
hands, on the judgment of Clay against Oldham,
there cannot exist a doubt, it might have been
seized and sold as his property; but it is diffi-
cult to comprehend how calling it Clay's pro-

East'n. District,
*July* 1825.

BAINBRIDGE
*vs.*
CLAY.

perty, in the absence of any thing like a writ of seizure or execution on the part of Clay, could make it his. Suppose Clay had agreed to receive, in satisfaction of his judgment, a piece of land or a slave, could Bainbridge before the conveyance made, seize it as Clay's. The party until the execution of the act may always retreat, and in the case of the money, he could equally have refused its payment to Clay; it was still under the controul of Oldham, until execution or seizure by Clay, and he was competent to dispose of it, at pleasure. The plaintiff has mistaken an intention to pay, for an actual payment and has mistaken Oldham's money, for Clay's debt. The latter he might have seized in Oldham's hands, by an execution directed to the parish of Lafourche, the residence of Oldham; the former upon the principles of the judgment he could not seize, as Clay's property, until it was delivered, any more than he could have seized a lot of sugar and cotton shipped to the debtor, against the proceeds of which, were to be applied to the same purpose.

*Hennen*, on the same side. The appellee would respectfully suggest to the court, that a

part of the record has been overlooked in deciding this case.

The letter of Oldham, introduced by the defendant, without exception thereto by Bainbridge's counsel, acknowledges the receipt of the letter of the defendant, dated 25th January, 1825, announcing the assignment of the debt by Clay. Another letter of the 30th January, 1825, stating the same fact, was received by him. Further, the defendant offered a witness to prove that notice had been given to Oldham, by his own acknowledgment, prior to the execution of Bainbridge. This evidence was rejected below; and a bill of exceptions taken. This appears not to have been noticed by the court, as nothing is said on the point, in the opinion delivered. It is believed that this evidence was admissible; if so, the complexion of the case would be totally changed, should the cause be remanded for the purpose of receiving this evidence.

For these reasons the appellee prays that a rehearing may be granted him.

The rehearing was refused. In announcing this, MARTIN, J. said—We have considered that the notice to Polk had not the effect of

destroying the right of the plaintiff in the *fi. fa.*
This notice was not equivalent to a delivery or
tradition, for it left Oldham the absolute con-
troul of the thing assigned. He might, not-
withstanding this notice, till it was communi-
cated to him, have made a legal payment to
Clay, or any other assignee, besides Hennen,
who might have presented himself. Hennen
was like a purchaser of goods, before delivery,
till knowledge of the assignment was given to
Oldham himself; for till then a payment would
have defeated his right on Oldham.

By placing his *fi. fa.* into the sheriff's hands,
Bainbridge acquired a lien on Oldham's pro-
perty, susceptible of being levied on, on all
Clay's goods in his stores, or any of his agents,
holding for him, on the debt of Oldham, in
the hands of Polk, or any other agent, and this
right was not defeated by Polk paying the mo-
ney into court.

In the present suit, both parties had a claim
which the court might have recognised. Bain-
bridge had a *fi. fa.* which gave him a lien on
any property of which Clay had the disposi-
tion. This money, then, being at Clay's dispo-
sition, would have been ordered to be paid to
him, unless another person opposed his demand

by shewing a better right. Let it be granted that Hennen might have successfully opposed Clay's call on the court. How stands the matter between Hennen and Bainbridge? Hennen has an assignment; but the assignment of a debt is not in the way of a creditor, till served on the debtor; because that service alone deprives the latter of the faculty of paying to any one, but the assignee. Bainbridge, on the contrary, produces a *fi. fa.* which gives him a lien on all Clay's property. It attached on the debt, due to Clay by Oldham, on the money, the instant it was paid in discharge of Clay's judgment, and thus became Clay's.

But it is said there is evidence of notice to Oldham himself.

According to Folwell's testimony, copies of the assignments were delivered to Oldham on 4th of February; the *fi. fa.* was put in to the sheriff's hands on the 1st. According to Farrie, admitting that the notice to Polk was notice to Oldham, there is no great certainty that Polk was notified before the *fi. fa.* issued. The witness believes it, but cannot recollect any circumstance that induces such a belief. These gentlemen are Hennen's own witnesses.

Our attention has been drawn to a letter of

Oldham, in which he acknowledges the receipt of Hennen's letter, apprising him of the assignment: but this letter is without a date; and its post-mark refers to a day posterior to that on which the *fi. fa.* came to the sheriff's hands.

So that no part of the evidence on the record establishes, what is essential to Hennen's recovery, notice to Oldham, anterior to the sheriff's receipt of the execution.

We did not consider the bill of exceptions required any notice. It appeared to us obvious the judge was right. Evidence was offered of " the verbal acknowledgement of Oldham to the witness, that he had received notice of the assignment from Clay to Waggaman, and Waggaman to Hennen, before the execution issued in favor of Bainbridge."

Now this was mere hearsay testimony. Oldham should have been brought. It is now said here, that this acknowledgement was made *before* Bainbridge took out his *fi. fa.* But if that was the case, the counsel ought to have made it appear on the record.